**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
NORTHERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Criminal No. GLR-96-458** |
| | : | |
| **WARREN HILL,** | : | |
| | : | |
| **Defendant.** | : | |

---

**<u>WARREN DEVON HILL'S CORRECTED MOTION FOR COMPASSIONATE RELEASE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i) AND INCORPORATED MEMORANDUM OF LAW</u>**

**TABLE OF CONTENTS**


INTRODUCTION ..... 1

STATEMENT OF FACTS ..... 1

ARGUMENT ..... 4

I. THE COURT HAS THE AUTHORITY TO REDUCE MR. HILL'S SENTENCE. ..... 4

II. EXTRAORDINARY AND COMPELLING CIRCUMSTANCES JUSTIFY A REDUCTION OF MR. HILL'S SENTENCE. ..... 6

A. Mr. Hill's Sentence Was Unduly Harsh, Even Compared to His Codefendants Who Also Committed Murder. ..... 7

B. Mr. Hill Would Not Receive a Similar Sentence Today, Which Creates an Unfair Sentencing Disparity with Similarly Situated Defendants Who Were Convicted More Recently. ..... 10

C. Mr. Hill's Youth at the Time of the Offense, His Lack of Prior Criminal History, and the Length of the Mandatory Sentence He Received Warrant a Sentence Reduction. ..... 15

D. Mr. Hill's Thorough Rehabilitation Supports a Reduction of His Sentence. ..... 18

III. THE SENTENCING FACTORS SUPPORT REDUCING MR. HILL'S SENTENCE TO TIME SERVED ..... 24

A. Mr. Hill's History and Characteristics Justify a Sentence Shorter than Life Imprisonment ..... 25

B. Under Modern Sentencing Practices, a Shorter Sentence is Sufficient to Afford Deterrence and Promote Respect for the Law. These Sentencing Practices Render a Sentence Reduction Necessary to Avoid an Unwarranted Disparity. ... 27

C. Mr. Hill Will Not Commit Further Crimes. ..... 29

D. Time Served is an Appropriate Sentence. ..... 31

CONCLUSION ..... 32

## TABLE OF AUTHORITIES

### Cases

*Babb v. United States*, Crim. No. ELH-04-910,
2021 WL 2315459 (D. Md. June 4, 2021) .......................................................... passim

*Bellamy v. United States*, 474 F. Supp. 3d 777 (E.D. Va.),
*appeal docketed,* No. 20-7223 (4th Cir. 2020). ...........................................6-7, 16-17

*Miller v. Alabama*, 567 U.S. 460 (2012)........................................................... 8, 15, 16

*Montgomery v. Louisiana*, 577 U.S. 190 (2016)............................................................ 8

*Landrigan v. Schriro,* 441 F.3d 638 (9th Cir. 2006) (en banc),
*vacated*, 501 F.3d 1147 (9th Cir. 2007)................................................................... 26

*Pepper v. United States*, 562 U.S. 476 (2011) ...................................................... 19, 25

*Santosky v. Kramer*, 455 U.S. 745 (1982) ................................................................... 26

*United States v. Adams*, ___ F. Supp. 3d ____, 2021 WL 126797 (D. Mo. 2021)....... 10

*United States v. Azianbidji*, Crim. No. PWG-17-253,
2021 WL 307416 (D. Md. Jan. 29, 2021) ............................................................... 4, 5

*United States v. Bazemore*, Crim. No. CCB-16-597 (D. Md.) ............................... 12, 32

*United States v. Benson*, Crim. No. PWG-09-240,
2020 WL 7239983 (D. Md. Dec. 9, 2020) ...................................................... 11-12, 28

*United States v. Booker*, 543 U.S. 220 (2005) ............................................................ 14

*United States v. Braxton*, Crim. Nos. JKB-09-478, JKB-15-408,
2020 WL 4748536 (D. Md. Aug. 17, 2020)................................................................. 5

*United States v. Cano*, No. 95-00481-CR-ALTONAGA,
2020 WL 7415833 (S.D. Fla. Dec. 16, 2020)............................................... 8, 9-10, 13

*United States v. Chase*, Crim. No. GLR-16-453 (D. Md.) ........................................... 13

*United States v. Cruz*, No. 3:94-CR-112 (JCH),
2021 WL 1326851 (D. Conn. Apr. 9, 2021)............................................ 15-16, 17, 24

*United States v. Fletcher*, Crim. No. TDC-05-179,
2020 WL 3972142 (D. Md. July 13, 2020) ............................................................ 4-5

*United States v. Floyd*, 945 F.2d 1096 (9th Cir. 1991) ............................................... 26

*United States v. Floyd*, Crim. No. CCB-16-597 (D. Md.) .......... 13

*United States v. Gall*, 552 U.S. 38 (2007) .......... 23

*United States v. Gluzman*, 7:96-cr-323 (LJL), 2020 WL 4233049 (S.D.N.Y. July 23, 2020) .......... 23

*United States v. Gray*, Crim. No. CCB-95-364, 2021 WL 1856649 (D. Md. May 10, 2021) .......... passim

*United States v. Hardy*, Crim. No. ELH-11-358, 2020 WL 4436376 (D. Md. Aug. 3, 2020) .......... 30

*United States v. Hill*, Crim. No. WMN-97-465 (D. Md.) .......... 15

*United States v. Hernandez-Guevara*, Crim. No. PX-17-382 (D. Md.), .......... 12-13

*United States v. Holloway*, Crim. No. ELH-09-363 2020 WL 5893639 (D. Md. Oct. 5, 2020) .......... 5

*United States v. Howard*, 773 F.3d 519 (4th Cir. 2014) .......... 29

*United States v. Jett*, 18 F. App'x 224 (4th Cir. 2001) .......... 1, 7, 8

*United States v. Kibble*, 992 F.3d 326 (4th Cir. 2021) .......... 5

*United States v. King*, Crim. No. TDC-05-203 (D. Md. May 24, 2021), ECF No. 190 .......... 10, 11

*United States v. Lawson*, Crim. No. GLR-16-453 (D. Md.) .......... 13

*United States v. Ledezma-Rodriguez*, 427 F. Supp. 3d 498 (S.D. Iowa 2020) .......... 10

*United States v. Lopez*, Cr. No. 97-01117 ACK-2, 2020 WL 6298061 (D. Haw. Oct. 27, 2020) .......... 18, 24, 31

*United States v. Maumau*, No. 2:08-cr-758-TC-11, 2020 WL 806121 (D. Utah Feb. 18, 2020) .......... 11, 17

*United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020) .......... 4, 10, 17, 18

*United States v. McDonald*, 986 F.3d 402 (4th Cir. 2021) .......... 25

*United States v. Melendez-Rivera*, Crim. No. PX-17-154 (D. Md.) .......... 13

*United States v. Millan*, No. 91-CR-685 (LAP), 2020 WL 1674058 (S.D.N.Y. Apr. 6, 2020) .......... 8-9, 23

*United States v. Murray*, Crim. No. TDC-05-203 (D. Md. May 24, 2021), ECF No. 193 .......... 10, 11

*United States v. Pauley*, 511 F.3d 468, 474-75 (4th Cir. 2007) .......... 22

*United States v. Payton*, Crim. No. PJM-06-341, 2021 WL 927631 (D. Md. Mar. 11, 2021) .......... 8

*United States v. Perella*, 273 F. Supp. 2d 162 (D. Mass. 2003) .......... 19

*United States v. Perez*, Crim. No. 3:02cr7 (JBA), 2021 WL 837425 (D. Conn. Mar. 4, 2021) .......... 5-6, 24, 31

*United States v. Ramsay*, ___ F. Supp. 3d ____, 2021 WL 1877963 (S.D.N.Y. 2021) .......... passim

*United States v. Redd*, 444 F. Supp. 3d 717 (E.D. Va. 2020) .......... 28, 32

*United States v. Robinson*, No. 3:10cr261, 2020 WL 4041436 (E.D. Va. July 17, 2020) .......... 19, 30, 31

*United States v. Rodriguez*, 492 F. Supp. 3d 306 (S.D.N.Y. 2020) .......... 24, 31, 32

*United States v. Sappleton*, Crim. No. PJM-01-284, 2021 WL 598232 (D. Md. Feb. 16, 2021) .......... 9, 11, 14-15

*United States v. Stockton*, Crim. No. ELH-99-352, 2021 WL 1060347 (D. Md. Mar. 17, 2021) .......... 9, 13

*United States v. Thomas*, Crim. No. ELH-97-355. .......... 8

*United States v. Thomas*, No. 15-7232 (4th Cir.) .......... 8

*United States v. Vigneau*, 473 F. Supp. 3d 31 (D.R.I. 2020) .......... 10, 12, 15

*United States v. Williams*, 18 F. App'x 52 (4th Cir. 2001) .......... 8

*United States v. Williams*, Crim. No. PWG-90-135, 2021 WL 1662461 (D. Md. Apr. 28, 2021) .......... 9, 15, 28

**Statutes**

18 U.S.C. § 1959 .......... 11

18 U.S.C. § 3553 .......... passim

18 U.S.C. § 3582 .......... 1, 4, 10

Warren Devon Hill, through undersigned counsel, respectfully moves this Court for compassionate release under 18 U.S.C. § 3582(c)(1)(A). Mr. Hill asks the Court to reduce his sentence to time served or to grant such lesser reduction as the Court deems fit.

## INTRODUCTION

Warren Hill was only 22 years old when he committed the crime for which he was convicted. He was only 24 years old when sentenced. He was capable of rehabilitation, and of redemption. The crime with which he was charged, however, required that he be sentenced to prison for the remainder of his life. This charge was not brought against many of his codefendants and would not be brought today. The inflexibility of this practice effectively deprived Mr. Hill of a sentencing hearing. It also created a significant disparity between Mr. Hill's sentence and the sentences of his codefendants, many of whom received far lighter sentences for the same conduct, and of defendants sentenced today for similar crimes.

These circumstances create extraordinary and compelling circumstances that warrant a reduction of Mr. Hill's sentence. The Court should reduce Mr. Hill's sentence to one that is more appropriate for his crime, in light of the man he is today.

## STATEMENT OF FACTS

Warren Hill was born in 1973. PSR at 1. Mr. Hill suffered a hard childhood, plagued with violence and drugs. At a young age, he turned to crime. Mr. Hill and his partners—Alan Chapman and Mark Coles, collectively known as "the Young Guns"— antagonized a large and violent drug organization led by Anthony Jones. *See United States v. Jett*, 18 F. App'x 224, 229 (4th Cir. 2001) (describing the nature

of Mr. Jones and his organization). Desperate to save their lives, the Young Guns agreed to kill a rival drug dealer, Elway Williams. PSR ¶ 8. They arranged a meeting with Mr. Williams on February 26, 1996. They then opened fire on Mr. Williams and his driver, Derrick Rivers. *Ibid.* Mr. Williams survived but Mr. Chapman fatally shot Mr. Rivers in the head. *Ibid.* Daniel Ross, one of Mr. Hill's codefendants, paid $15,000 for the attempted hit to another codefendant, Levi Benton. *Ibid.* Mr. Benton, who had helped plan the hit, paid $3,000 to Mr. Hill. *Ibid.*

Mr. Hill was arrested on January 15, 1997. *Id.* at 1. No plea agreement was extended to Mr. Hill. He was tried for conspiring to commit murder in aid of racketeering (Count One), murder in aid of racketeering (Count Two), attempted murder in aid of racketeering (Count Three), and drug conspiracy (Count Six). On December 22, 1997, he was found guilty on all counts. The amount of cocaine reasonably foreseeable to Mr. Hill was 50 kilograms. PSR ¶ 9. He was sentenced to life imprisonment on Count Two. ECF No. 786. The PSR argued that the sentence of Count Six should be increased because of the murder of Mr. Rivers, PSR ¶ 27, and the Court adopted its reasoning. ECF No. 786 at 6. Therefore, Mr. Hill was sentenced to life imprisonment on Count Six. ECF No. 786. He was sentenced to ten years on Counts One and Three, to run concurrent with his life sentences. *Ibid.* Giving credit for pretrial incarceration, Mr. Hill has now served just under 293 months of this sentence.

Mr. Hill's codefendants were significantly more fortunate. Although he was just as involved with the shooting as Mr. Hill, Mark Coles was sentenced to 235

months' imprisonment for murder in furtherance of drug conspiracy. ECF No. 938. Mr. Coles was released in 2014 and completed his supervised release in 2017. ECF No. 1244. Mr. Benton was found guilty of conspiracy to commit murder in aid of racketeering and sentenced to 120 months' imprisonment. ECF No. 809. As for Mr. Ross, he pled guilty to murder in aid of drug conspiracy, ECF No. 70, and was sentenced to 97 months' imprisonment. ECF No. 953.

During the intervening years, Mr. Hill has been a model inmate, a loving son, a conscientious father, and a devoted grandfather. His last disciplinary infraction was on March 24, 2013, for possession of alcohol. Hill disciplinary records, Ex. 2, at 1. He began drug education a few weeks later, which he has since completed. Hill program review, Ex. 3, at 3. He has been working in his current position for the last three years, *id.* at 1, and has performed similar work throughout his time in prison. Mr. Hill did not complete his GED, finding the environment more conducive to trouble than preventive of it, but has completed many other education courses. *Id.* at 2-3. In total, he has completed roughly 1800 hours of programming. *See* Hill educational records, Ex. 4, at 1-2. He has done his utmost to stay in contact with his family and to support them from behind prison walls.

On July 15, 2020, Mr. Hill submitted his first request for compassionate release to the Warden of FCI Cumberland. On July 27, the Warden denied the motion, stating that Mr. Hill was not eligible for compassionate release because he was not elderly and did not have sufficiently severe medical conditions. Letter from Warden to Warren Hill, Ex. 1 at 1. On November 11, 2020, Mr. Hill again submitted

a petition for compassionate release. The Warden denied his request on November 30, 2020, on the grounds that he did not meet the medical criteria for compassionate release and the only non-medical criteria permitting relief to an inmate of his age were death or incapacitation of a spouse or family caregiver. Letter from AWP/Acting Warden to Warren Hill, Ex. 1 at 2.

## ARGUMENT

### I. The Court Has the Authority to Reduce Mr. Hill's Sentence.

The Court may reduce a term of imprisonment upon a defendant's motion, "after the defendant has fully exhausted all administrative rights . . . or the lapse of 30 days from the receipt of such a request," if "after considering the factors set forth in section 3553(a) . . . it finds that extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). Such reduction must also be "consistent with applicable policy statements issued by the Sentencing Commission," 18 U.S.C. § 3582(c)(1)(A), but no such statements currently exist. *United States v. McCoy*, 981 F.3d 271, 281-82 (4th Cir. 2020). Accordingly, the Court is "empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise." *Id.* at 284 (emphasis and omission in original) (quoting *United States v. Zullo*, 976 F.3d 228, 230 (2d Cir. 2020)).

Mr. Hill has submitted two requests for compassionate release, both of which were denied, more than 30 days ago. A defendant may move a court for compassionate release thirty days after the warden receives his request. *United States v. Azianbidji*, Crim. No. PWG-17-253, 2021 WL 307416, at *3 (D. Md. Jan. 29, 2021) (citing District authority); *United States v. Fletcher*, Crim. No. TDC-05-179,

2020 WL 3972142, at *2 (D. Md. July 13, 2020). Moreover, a defendant is not required to raise the precise arguments to the BOP that he later raises with a court. *Azianbidji*, 2021 WL 307416, at *3; *United States v. Holloway*, Crim. No. ELH-09-363, 2020 WL 5893639, at *7-8 (D. Md. Oct. 5, 2020). Therefore, Mr. Hill has pursued an administrative remedy, as required.

The nature of Mr. Hill's crime does not preclude a reduction in sentence. "Section 3582(c)(1) permits a district court to reduce a sentence in 'any case'—not just . . . in cases involving low-level or non-violent offenses." *United States v. Kibble*, 992 F.3d 326, 334 (4th Cir. 2021) (Gregory, C.J., concurring). Courts can, and do, grant compassionate release of defendants convicted of murder. *See, e.g.*, *United States v. Gray*, Crim. No. CCB-95-364, 2021 WL 1856649, at *6 (D. Md. May 10, 2021) (citing authority from this District and other districts) (granting compassionate release to defendant convicted of murder); *see also, e.g.*, *Babb v. United States*, Crim. No. ELH-04-910, 2021 WL 2315459 (D. Md. June 4, 2021) (reducing life sentence for defendant convicted of drug conspiracy and sentenced to life based on murder cross-reference).

Likewise, that a life sentence remains mandatory for murder in aid of racketeering does not preclude reduction of Mr. Hill's sentence to a term shorter than life. *United States v. Braxton*, Crim. Nos. JKB-09-478, JKB-15-408, 2020 WL 4748536, at *5 (D. Md. Aug. 17, 2020) ("The extraordinary and compelling circumstances . . . have empowered the Court to revisit the sentence it was forced to impose in 2015 and freed the Court from the restrictive mandatory minimum then required."); *United States v. Perez*, Crim. No. 3:02cr7 (JBA), 2021 WL 837425, at *5

(D. Conn. Mar. 4, 2021) (citing authority from multiple districts and the Court of Appeals for the Second Circuit) ("Although his life sentences are mandatory, the mandatory component does not bar relief under the First Step Act."); *see Gray*, 2021 WL 1856649, at *1 (reducing sentence of a defendant convicted under the same statute). Arguably, "such mandatory minimum sentences will often *themselves be* an extraordinary and compelling reason warranting a sentence reduction." *United States v. Ramsay*, ___ F. Supp. 3d ____, 2021 WL 1877963, at *16 (S.D.N.Y. 2021) (emphasis added).

Therefore, the Court has the authority to reduce Mr. Hill's sentence if it finds that extraordinary and compelling circumstances warrant a reduction of his sentence.

## II. Extraordinary and Compelling Circumstances Justify a Reduction of Mr. Hill's Sentence.

At 22 years old, Warren Hill committed his first violent crime. At age 24, for this offense, Mr. Hill was sentenced to life in prison. Such a sentence would not occur today, even for murder. Even then, the sentence was excessive: many of his codefendants, every bit as guilty as Mr. Hill, have since gone free. Unless this motion is granted, however, Mr. Hill will spend the rest of his life behind bars. Mr. Hill's youth, the severity of his sentence, the resulting disparity with his codefendants then and with similarly situated defendants now, and his subsequent rehabilitation are extraordinary and compelling circumstance warranting a reduction of his sentence. *See, e.g.*, *Bellamy v. United States*, 474 F. Supp. 3d 777, 786 (E.D. Va.) ("Petitioner's relative youth at the time of the sentence, the overall length of the sentence, the disparity between his sentence and those sentenced for similar crimes after the

FIRST STEP Act, and his rehabilitative efforts form an extraordinary and compelling basis for relief."), *appeal docketed,* No. 20-7223 (4th Cir. 2020).

**A. Mr. Hill's Sentence Was Unduly Harsh, Even Compared to His Codefendants Who Also Committed Murder.**

Many of Mr. Hill's codefendants were no less guilty than Mr. Hill. Some were more so. Yet, these defendants did not receive mandatory life sentences, even though they were also convicted of murder. This resulted in an unduly harsh sentence and a sentencing disparity with defendants who were at least as culpable, warranting a reduction of Mr. Hill's sentence.

Daniel Ross was a ranking member of the drug trafficking organization to which many defendants belonged. *Jett*, 18 F. App'x at 230. It was Mr. Ross who arranged the meeting at which Mr. Hill agreed to kill Mr. Williams. *Ibid.* Mr. Ross later paid $15,000 to Mr. Hill and others (Mr. Hill received $3,000) for the hit. *Ibid.* Mr. Ross was charged with murder in aid of racketeering but pled guilty instead to murder in aid of drug conspiracy. ECF No. 70. He was sentenced to 97 months' imprisonment. ECF No. 953.

John Benton initiated the meeting at which the assassination was planned. *Jett*, 18 F. App'x at 230. For organizing the hit, he took $6,000 of Mr. Ross' money. *Ibid.* A jury convicted Mr. Benton of conspiracy to commit murder in aid of racketeering. *Id.* at 231. Mr. Benton was sentenced to 120 months' imprisonment. ECF No. 809.

Mark Coles was exactly as guilty as the defendant: he carried out the shooting alongside Mr. Hill. *Jett*, 18 F. App'x at 230. He (apparently) pled guilty to murder in aid of drug conspiracy. He was sentenced to 235 months. ECF No. 938.

Hilton Thomas, although not formally a codefendant, was a member of the same criminal conspiracy. He was convicted of murder in aid of racketeering for killing a government witness. *United States v. Williams*, 18 F. App'x 52, 54 (4th Cir. 2001). Although Mr. Thomas initially received a life sentence, his case was remanded for resentencing in light of *Montgomery v. Louisiana*, 577 U.S. 190 (2016), and *Miller v. Alabama*, 567 U.S. 460 (2012). *See* Joint Motion for Remand, *United States v. Hilton Thomas*, No. 15-7232 (4th Cir. Jan. 29, 2016), ECF No. 11. Judge Nickerson reduced his sentence to 480 months. Amended Judgment in a Criminal Case at 2, *United States v. Hilton Thomas*, Crim. No. ELH-97-355 (D. Md. June 1, 2016).

Courts have found that a sentencing disparity with codefendants, whether imposed at initial sentencing or arising later, warrants a sentence reduction. *United States v. Payton*, Crim. No. PJM-06-341, 2021 WL 927631, at *2 (D. Md. Mar. 11, 2021) (finding extraordinary and compelling circumstances because of sentencing disparity created by reduction of conspiracy leader's sentence); *United States v. Cano*, No. 95-00481-CR-ALTONAGA, 2020 WL 7415833, at *6 (S.D. Fla. Dec. 16, 2020) (finding a disparity between the defendant's life sentence and the 243 month sentence initially imposed on the leader of the conspiracy, as well as the significantly shorter sentences imposed on codefendants, to be a compelling reason to grant compassionate release); *United States v. Millan*, No. 91-CR-685 (LAP), 2020 WL 1674058, at *15

(S.D.N.Y. Apr. 6, 2020) ("[A]s the chart above demonstrates, Mr. Millan's life sentence is now significantly out-of-line with those of his co-defendants. A reduction of Mr. Millan's sentence therefore is needed to 'avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.'"); *United States v. Williams*, Crim. No. PWG-90-135, 2021 WL 1662461, at *5 (D. Md. Apr. 28, 2021) (finding a sentence reduction necessary to avoid an unwarranted sentencing disparity, in part because all co-defendants had been released); *see United States v. Stockton*, Crim. No. ELH-99-352, 2021 WL 1060347, at *14 (D. Md. Mar. 17, 2021) (considering sentence reduction of defendant's more culpable brother as a factor that supports reducing defendant's sentence to time served).

That other defendants pled guilty and cooperated with the government may justify some disparity with the sentence received by those defendants. *See Stockton*, 2021 WL 1060347, at *12. Even so, there is an enormous difference between a term of years (even decades) behind bars and a sentence to die in prison. Cooperation and pleading guilty are not sufficient to justify such a difference. An injustice of this magnitude cries out for judicial redress. *United States v. Sappleton*, Crim. No. PJM-01-284, 2021 WL 598232, at *1, *3 (D. Md. Feb. 16, 2021) (finding extraordinary and compelling circumstances based on sentencing disparity with coconspirator who pled guilty and cooperated against other defendants); *Cano*, 2020 WL 7415833, at *6 (finding extraordinary and compelling circumstances where the conspiracy leader cooperated and pled guilty, "even considering that [the leader] accepted responsibility

by entering a guilty plea, while Defendant did not"); *see Stockton*, 2021 WL 1060347, at *12 (reducing sentence to time served, in part because "the sentence of 480 months, which essentially quadrupled the original plea offers, would seem to constitute punishment of the defendant for his decision to proceed to trial");

**B. Mr. Hill Would Not Receive a Similar Sentence Today, Which Creates an Unfair Sentencing Disparity with Similarly Situated Defendants Who Were Convicted More Recently.**

Courts have found an overly harsh sentence to constitute an extraordinary and compelling reason for relief. *United States v. Vigneau*, 473 F. Supp. 3d 31, 36-37 (D.R.I. 2020) (citing authority); *see, e.g.*, *id.* at 37-38; *United States v. Adams*, ___ F. Supp. 3d ____, 2021 WL 126797, at *9 (D. Mo. 2021); *United States v. Ledezma-Rodriguez*, 427 F. Supp. 3d 498, 505 (S.D. Iowa 2020); *see also Ramsay*, 2021 WL 1877963, at *16-17 (finding that a mandatory life sentence is itself an extraordinary and compelling reason warranting a sentence reduction). In particular, courts frequently find extraordinary and compelling circumstances where a defendant has received a long sentence that he would not receive today. *McCoy*, 981 F.3d at 285; *see, e.g.*, *United States v. King*, Crim. No. TDC-05-203, slip op. at 5 (D. Md. May 24, 2021), ECF No. 190 ("The Court concludes that King has presented 'extraordinary and compelling reasons' arising from the gross disparity between his sentence . . . and the sentence he would receive if sentenced today that warrant a reduction pursuant to 18 U.S.C. § 3582(c)(l)(A)."); *United States v. Murray*, Crim. No. TDC-05-203, slip op. at 5 (D. Md. May 24, 2021), ECF No. 193 (same). This is especially true when the defendant was young at the time of conviction. *See, e.g.*, *Ramsay*, 2021 WL 1877963,

at *13-17; *United States v. Maumau*, No. 2:08-cr-758-TC-11, 2020 WL 806121, at *5 (D. Utah Feb. 18, 2020) (cited with approval in *McCoy*, 918 F.3d at 285, 287).

Formally, a life sentence remains mandatory for murder in aid of racketeering. Practically, however, the sentencing landscape has changed significantly since Mr. Hill was sentenced. These changes show that, if he had committed the same crime but been charged today, Mr. Hill would not have received a life sentence. The resulting disparity with similar defendants sentenced today and the severity of Mr. Hill's sentence are extraordinary and compelling circumstances that warrant a reduction of his sentence.

First, the government has changed its approach to prosecuting violent crimes. Perhaps recognizing the harshness of an inflexible life sentence, the government rarely brings charges of murder in aid of racketeering under 18 U.S.C. § 1959. According to PACER, in 2020, the government did not charge the crime once in the District of Maryland. This change is significant because judges in this District have held changes in the government's charging practices to warrant reducing a sentence imposed under charges or sentencing enhancements that are no longer brought. *King*, slip op. at 5, 7-8 (finding extraordinary and compelling circumstances based on disparity between sentence imposed and the sentence that would be sought today, and reducing sentence to that defendant would receive today); *Murray*, slip op. at 5, 7-8 (same); *Sappleton*, 2021 WL 598232, at *3 (finding the improbability that a sentencing enhancement would be sought today to contribute to the sentencing disparity that constituted extraordinary and compelling circumstances); *see United*

*States v. Benson*, Crim. No. PWG-09-240, 2020 WL 7239983, at *4 (D. Md. Dec. 9, 2020) (considering the government's subsequent limitation of the sentencing enhancement applied to defendant); *see also Vigneau*, 473 F. Supp. 3d at 38-39 (finding extraordinary and compelling circumstances because defendant had been convicted of a crime that was no longer charged).

Second, courts in this District have "recognized the bluntness of mandatory life sentences . . . ." *Gray*, 2021 WL 1856649, at *6. Today, judges in this District commonly impose sentences for murder that are significantly shorter than life. In the District of Maryland, for fiscal year 2020, the median length of a sentence for murder was 270 months. *Interactive Data Analyzer*, U.S. Sent'g Comm'n, https://ida.ussc.gov/analytics/saw.dll?Dashboard (last visited May 31, 2021) [hereinafter "D. Md. Average Sentences"].[1] The mean sentence length was 254 months. Courts in this District impose sentences of 25 years or less for even the most heinous murders. *See United States v. Bazemore*, Crim. No. CCB-16-597 (D. Md. Nov. 15, 2018), ECF No. 510 (imposing sentence of 300 months[2] for shooting four victims and killing one, *see* ECF No. 368); *see also, e.g.*, *United States v. Hernandez-Guevara*, Crim. No. PX-17-382 (D. Md. Oct. 18, 2019), ECF No. 424 (imposing sentence of 292 months on MS-13 member who conspired to commit a brutal murder and later

---

[1] To find the relevant data, go to the Sentencing Outcomes tab and the Sentence Length subtab. Select 2020 for Fiscal Year, Maryland for District (under Geography), and Murder for Crime Type.

[2] This sentence was later reduced to 285.33 months to reflect an uncredited period of imprisonment. *United States v. Bazemore*, Crim. No. CCB-16-597 (D. Md. Nov. 26, 2018), ECF No. 510.

stabbed and shot victims while attempting to rob them, *see* ECF No. 192-1); *United States v. Lawson*, Crim. No. GLR-16-453 (D. Md. Aug. 23, 2019), ECF No. 713 (imposing sentence of 276 months on member of murderous street gang who, on separate occasions over three years, committed one murder and attempted to commit two further murders, *see* ECF No. 604 at 10); *United States v. Chase*, Crim. No. GLR-16-453 (D. Md. Oct. 18, 2017), ECF No. 397 (imposing sentence of 300 months on member of the same gang who, in combination with his girlfriend and two others, lured into isolation and then murdered someone who had made a pass at his girlfriend, *see* ECF No. 358 at 10-11); *United States v. Melendez-Rivera*, Crim. No. PX-17-154 (D. Md. June 20, 2019), ECF No. 122 (imposing sentence of 240 months on MS-13 member who conspired to isolate and murder victim, eventually holding his head underwater until he drowned, *see* ECF No. 94-1).[3]

Additionally, the law of sentencing has changed. Mr. Hill was sentenced to life imprisonment for drug conspiracy based on application of the U.S. Sentencing Guidelines' murder cross reference. At the time of Mr. Hill's conviction, these Guidelines were mandatory. Since Mr. Hill was sentenced, however, the Supreme

---

[3] All of these sentences were the result of plea agreements. That the government offered plea agreements to such defendants indicates the extent to which its charging practices have changed. To the extent that Mr. Hill's inability to plead guilty could be thought to warrant a longer sentence, the disparity between the plea deal he would be offered today and the sentence he received remains too great. *See Stockton,* 2021 WL 1060347, at *12; *Cano*, 2020 WL 7415833, at *6. Courts have imposed sentences of similar length even when the defendant is found guilty by a jury. *See, e.g.*, *United States v. Floyd*, Crim. No. CCB-16-597 (D. Md. July 23, 2019), ECF No. 691 at 2 (imposing sentence of 360 months' imprisonment on defendant convicted of racketeering conspiracy that included conspiracy to murder, ECF No. 491 at 9).

Court of the United States has held that judges have the authority to deviate from these scheduling guidelines. *United States v. Booker*, 543 U.S. 220, 245 (2005). Under current law, the mandatory minimum sentence for the quantity of drugs foreseeable to Mr. Hill (50 kilograms of cocaine) is 10 years. *See* 21 U.SC. § 841(b)(1)(a)(ii); PSR ¶ 9. Therefore, if Mr. Hill were sentenced today, a judge could—and, as described above, likely would—impose a sentence shorter than life on Count Six. *See Babb*, 2021 WL 2315459, at *13 (granting compassionate release, despite guideline sentence of life based on murder cross reference, because a judge would no longer be compelled to impose such a sentence).

The result is an enormous disparity between the sentence Mr. Hill received, which could not be more severe (without being the death sentence), and the significant but much shorter sentence that a similar defendant would receive today. In the federal system, it has become rare to punish murder with life imprisonment. Nationally, the mean sentence for murder in fiscal year 2020 was 255 months. Charles R. Breyer et al., U.S. Sent'g Comm'n, *2020 Annual Report and Sourcebook of Federal Sentencing Statistics* 64 (2021), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2020/2020-Annual-Report-and-Sourcebook.pdf [hereinafter *2020 Sourcebook*]. Courts have found such changes in sentencing practice to warrant a sentence reduction. *Sappleton*, 2021 WL 598232, at *4 ("The Court therefore GRANTS Sappleton's motion for compassionate release based on the gross disparity between the sentence he received . . . and the sentence he would receive for the same

offense today."); *Vigneau*, 473 F. Supp. 3d at 38 (finding extraordinary and compelling circumstances, despite no change in controlling law, because the court would impose a much lower sentence today for the same crime); *Williams*, 2021 WL 1662461, at *4-5 (finding a sentence reduction necessary based, in part, on sentencing disparity with recent shorter sentences for more severe crimes).

### C. Mr. Hill's Youth at the Time of the Offense, His Lack of Prior Criminal History, and the Length of the Mandatory Sentence He Received Warrant a Sentence Reduction.

Mr. Hill became involved with drugs in his late teens. His first—and, prior to this, only—conviction was for selling heroin at the age of 18. PSR ¶¶ 41-43.[4] He was only 22 when he committed the offense at issue.

Youth "is a time of immaturity, irresponsibility, impetuousness, and recklessness. It is a moment and condition of life when a person may be most susceptible to influence and to psychological damage. And its signature qualities are all transient." *Miller v. Alabama*, 567 U.S. 460, 476 (2012) (internal quotations, citations, and alterations omitted). Although Mr. Hill was an adult when he committed the relevant offenses, this does not mean that he no longer possessed traits calling for a lesser sentence. *See Ramsay*, 2021 WL 1877963, at *13 ("[C]ourts cannot simply treat anyone over 18 as an 'adult' for sentencing purposes but must inquire whether the human being they are about to sentence is still in many respects an adolescent."); *United States v. Cruz*, No. 3:94-CR-112 (JCH), 2021 WL 1326851, at *5

---

[4] Mr. Hill was previously accused of other crimes but was not convicted of them. Indeed, shortly after his conviction in this case, Mr. Hill was acquitted of another charge brought against him. Crim. No. WMN-97-465 (D. Md. Mar. 10, 1998), ECF No. 38.

(D. Conn. Apr. 9, 2021) ("[T]he distinguishing characteristics of youth . . . 'do not disappear when an individual turns 18.'" (quoting *Roper v. Simmons*, 543 U.S. 551, 574 (2005))). Few would deny that a 22 year-old is far more impulsive than even a 25 year-old. Indeed, a growing body of research indicates that the brain is still developing at such an age, which influences youthful behavior. *See Ramsay*, 2021 WL 1877963, at *8-10 (summarizing research that brain development continues until into the 20s, resulting in riskier decisions). This influence is most pronounced in "high-pressure, time-sensitive, emotional contexts," *id.* at *10, such as deciding whether to save one's own life by any means necessary.

Such traits do not, of course, absolve Mr. Hill of killing a fellow human being (or of severely injuring another). They do, however, affect the appropriate punishment. First, these traits may indicate a lesser degree of moral blame. "It is uncontroversial that age, specifically youth, bears on an individual's blameworthiness in committing a criminal offense." *Cruz*, 2021 WL 1326851, at *5. They also indicate a greater propensity for reform, particularly when (as with Mr. Hill) the young defendant does not have a significant criminal history. These considerations often call for a lower sentence. *Miller*, 567 U.S. at 473 (citing *Graham v. Florida*, 560 U.S. 48, 71-74 (2010)) ("[T]he characteristics of youth . . . can render a life-without-parole sentence disproportionate."); *see Bellamy*, 474 F. Supp. 3d at 785 ("Petitioner was a young man with a nonviolent criminal history at the time of his offenses, making the application of such harsh penalties designed for violent,

recidivist offenders even more inappropriate."); *Ramsay*, 2021 WL 1877963, at *14 ("Ramsay's youth at the time of the offense counsels against a life sentence.").

Courts recognize that a defendant's youth often warrants a sentence reduction. The Court of Appeals has affirmed a grant of compassionate release, based on the district court's consideration of the defendants' youth and long sentences. *McCoy*, 981 F.3d at 286. In doing so, the Court of Appeals implied that "youth" was a relative term, extending to 24 years old, and that 17 years constituted a long sentence for someone imprisoned at such a young age. Other courts have likewise found the defendant's youth to be a significant consideration in granting compassionate release, particularly when the defendant received a long sentence. *Bellamy*, 474 F. Supp. 3d at 786 (finding extraordinary and compelling circumstances based on youth when sentenced, length of sentence, disparity between sentences then and now, and rehabilitation); *Maumau*, 2020 WL 806121, at *5 (finding that "Mr. Maumau's age, the length of sentence imposed, and the fact that he would not receive the same sentence if the crime occurred today" constitute extraordinary and compelling circumstances). This is true even of defendants who committed murder. *See Ramsay*, 2021 WL 1877963, at *15 ("Ramsay's youth at the time of the offense, his upbringing, and his demonstrated rehabilitation, taken together, are extraordinary circumstances that compel a sentence reduction."); *Cruz*, 2021 WL 1326851, at *4 (holding that the defendant's "age at the time of his crimes, the length of his sentence, his extraordinary rehabilitation, the COVID-19 pandemic, and his family circumstances constitute 'extraordinary and compelling reasons' under the statute");

*United States v. Lopez*, Cr. No. 97-01117 ACK-2, 2020 WL 6298061, at *5 (D. Haw. Oct. 27, 2020) (finding extraordinary and compelling circumstances based, in part, on the young age at which defendant was sentenced to life imprisonment).

### D. Mr. Hill's Thorough Rehabilitation Supports a Reduction of His Sentence.

Rehabilitation, combined with other circumstances, may present extraordinary and compelling grounds for a sentencing reduction. *McCoy*, 981 F.3d at 286 n.9. Such is the case with Mr. Hill, a model inmate and a loving father who has shown himself ready to reintegrate into society.

First, Mr. Hill deeply regrets his crime. His remorse is apparent to those close to him. *See, e.g.*, Letter from Warren Hill Jr. to Court, Ex. 5, at 1 ("My dad is a god fearing man who understands the decisions he made were wrong and he's done everything in his power to change himself as best as he could."); Letter from Latasha Hill to Court, Ex. 8, at 1 ("I know that my brother Warren has made mistakes in his life and he knows it as well. Warren has expressed to me that he knows he did wrong and takes responsibility for his wrong doing."); *see also* Letter from Kevin Norris to Court, Ex. 11, at 2 (describing Mr. Hill's grief at the loss of human life).

The Bureau of Prisons manifestly does not consider Mr. Hill a risk. Despite the violent nature of his crime, Mr. Hill is housed in a medium security facility. His risk of recidivism is deemed to be low. Ex. 3 at 3. This lack of concern is justified: Mr. Hill has committed only a single disciplinary infraction in the last ten years, for using intoxicants, when Mr. Hill suffered a loss in his long-term war with alcoholism. Ex. 2, at 1.

Notably, while Mr. Hill did not even acknowledge his alcohol problems when he was convicted, PSR ¶ 66, he has since come to understand the severity of his problem. Mr. Hill has completed drug education and drug treatment. Ex. 3 at 3. He understands the importance of continued treatment outside of prison. Mr. Hill remains sober to this day.

Courts have recognized that addiction treatment reduces propensity to commit crimes. *See, e.g.*, *Pepper v. United States*, 562 U.S. 476, 492 (2011) (recognizing that sobriety and drug treatment warrant a shorter sentence).[5] Accordingly, this supports Mr. Hill's petition for compassionate release. *See, e.g.*, *United States v. Robinson*, No. 3:10cr261, 2020 WL 4041436, at *6 (E.D. Va. July 17, 2020) (finding the defendant's completion of substance abuse program to support a sentence reduction).

But Mr. Hill's efforts to better himself have not stopped with addressing his addiction. Mr. Hill has educated himself thoroughly during his time in prison, even

---

5 *See also United States v. Perella*, 273 F. Supp. 2d 162, 164 (D. Mass. 2003) (citing Lisa Rosenblum, Comment, *Mandating Effective Treatment for Drug Offenders*, 53 Hastings L.J. 1217, 1220 (2002)) ("If drug addiction creates a propensity to crime, drug rehabilitation goes a long way to preventing recidivism. In fact, statistics suggest that the rate of recidivism is less for drug offenders who receive treatment while in prison or jail, and still less for those treated outside of a prison setting."); Nat'l Inst. on Drug Abuse, Nat'l Insts. of Health, *Drug Facts: Criminal Justice* 1 (2020), https://www.drugabuse.gov/sites/default/files/drugfacts-criminal-justice.pdf ("Decades of science shows that providing comprehensive substance use treatment to criminal offenders while incarcerated works, reducing both drug use and crime after an inmate returns to the community."); Nat'l Inst. on Drug Abuse, Nat'l Insts. of Health, *Principles of Drug Abuse Treatment for Criminal Justice Populations* 13 (2006), https://www.drugabuse.gov/sites/default/files/txcriminaljustice_0.pdf ("Treatment is the most effective course for interrupting the drug abuse/criminal justice cycle for offenders with drug abuse problems").

during lockdown. *See generally* Ex. 4. He has maintained employment throughout his sentence as well. He has developed a strong religious faith. *See* Letter from Ruby Hill to Court, Ex. 9 ("I guess the thing I love most about him is his faith in GOD. He has never stopped believing in GOD. In his heart he believes GOD has never stopped believing in him.")

Mr. Hill has also worked to help those around him. During his free time, Mr. Hill has served as an unofficial mentor to younger inmates, advising them on a range of issues and encouraging them to avoid gangs and violence.[6] *See* Letter from Gary Crum to Court, Ex. 13 (Mr. Hill has "become a leader for other inmates on how to conduct themselves while trying to transition back in to community."). At least once, Mr. Hill has placed himself in a tense—and, potentially, dangerous—situation to prevent conflict. Letter from Maurice King to Court, Ex. 16, at 2. Mr. Hill wishes to attain his freedom so that he can provide similar assistance to youth outside of prison. *See* Letter from Jerome Wright to Court, Ex. 14 ("Warren and I have spoken many times throughout the years on the things he would like to change and fix in the community to help the young kids coming up now to change their life before it is too late."); Letter from Shirley Hamlett to Court, Ex. 10 ("Warren is very passionate about wanting to be a voice for the youth and wanting to help them understand the street Life."); Letter from Keon Chavez to Court, Ex. 15 ("He wants to teach the youth from his past experiences, bad decisions and mistakes. He wants to uplift them and

---

6 The pandemic has hindered Mr. Hill's ability to communicate with other inmates. As such, Mr. Hill has not been able to obtain letters of support from other inmates at the time of filing.

motivate them to not become a product of their environment and to become productive citizens."). Those who know him are confident that his efforts would be of great benefit to such youth. Ex. 13 ("The Character of Mr. Hill and his advocacy will help the community and city help other youth not travel down that same rode."); Ex. 16 at 2 ("I can confidently express, if given the opportunity, Mr. Hill can make a tremendous and positive impact on his community."). One organization, King Renaissance, has offered him an opportunity of employment to do precisely that. Ex. 16 at 2-3.

Mr. Hill also has done all he can to support his family. *See* Letter from Linda Hill to Court, Ex. 7 ("[S]ince he been incarcerated he and his kids has made a loving bond. He's always giving and sending them positive advice."); Ex. 15 ("I can speak first-hand with his love for his family and I've witnessed how he goes beyond for them."). Even after being convicted, he wanted his mother to understand that it was not her fault that he took the wrong path. Ex. 7 ("He also told me don't you ever think this is your fault."). Now, he "makes sure he doesn't miss important dates on the calendar for his loved ones and friends that have taken the ride with him." Ex. 11 at 2; *see* Ex. 10 ("[T]he family meets at one of our relative home on holidays. If Warren is able (which he usually is), he calls when we are all there and he gets to speak with all of us."). Mr. Hill's son describes how his father and namesake "always had a way of expressing his love and care for his family through phone calls, handwritten letters, handmade cards and other creative things." Ex. 5 at 1. His daughter, Vonté, provides another example. Even from prison, Mr. Hill "loved me for who I was, never doubted

me, always supported me, and always pushed me to be better." Letter from Vonté Hill to Court, Ex. 6 at 1. She says that every brief conversation "made my life seem at ease" and "whenever he would call my phone . . . the biggest smile would appear upon my face as if he was right there in front of me; Heart melting in silence." *Ibid*. He is devoted to his granddaughter. Ex. 7 ("He also has become a grand father since he been there. Right now she's the highlight of his life."); Ex. 11 at 2 ("I selfishly want him to be able to help raise his Granddaughter whom he loves with all of his heart."). Every holiday in her life, Mr. Hill has sent her a homemade card or picture. Ex. 5 at 1.

Family ties such as Mr. Hill's not only reflect well upon the defendant's moral character. They also provide a strong incentive not to recidivate and a support network to help the defendant reintegrate into the community upon release. Accordingly, courts have found family ties to warrant a sentence reduction. *See, e.g.*, *Babb*, 2021 WL 2315459, at *19 ("To Babb's credit, while he has been incarcerated, he has endeavored to maintain ties with members of his family, including his children."); *Gray*, 2021 WL 1856649, at *5 ("Family, friends, religious leaders, and his sentencing judge . . . have also written that Gray has maintained ties with his family . . . ."); *Ramsay*, 2021 WL 1877963, at *4, *15 (reducing sentence, in part because of defendant's support for family and friends); *see also United States v. Pauley*, 511 F.3d 468, 474-75 (4th Cir. 2007) (affirming downward variance, in part because defendant "was a good father" which is a "valid consideration under § 3553(a)").

It bears emphasis that, throughout his time in prison, Mr. Hill had no hope of release. He was not attempting to strengthen a future motion for compassionate release, or to create a record for release on parole, which does not exist in the federal system. Instead, Mr. Hill has made sincere efforts help others and to be the best version of himself that he could be. Courts have found this a significant factor in granting compassionate release. *Babb*, 2021 WL 2315459, at *19 ("This is quite commendable, particularly given that Babb complied with the rules even when he had no reason to anticipate that a change in the law might one day give him a reason for hope."); *Millan*, 2020 WL 1674058, at *8 (finding it significant that "despite having had no realistic hope of release, [the defendant] has done everything in his power to rehabilitate himself"); *United States v. Gluzman*, 7:96-cr-323 (LJL), 2020 WL 4233049, at *17 (S.D.N.Y. July 23, 2020) ("[I]t counts in Ms. Gluzman's favor. As a woman who entered prison with no significant hope of release, she has dedicated remarkable efforts to improving others' lives."); *see also United States v. Gall*, 552 U.S. 38, 59 (2007) ("The District Court quite reasonably attached great weight to Gall's self-motivated rehabilitation, which was undertaken not at the direction of, or under supervision by, any court, but on his own initiative.").

Courts have frequently found rehabilitation of this caliber to support a sentence reduction, even for the most severe of crimes. *See, e.g.*, *Gray*, 2021 WL 1856649, at *4-6 (reducing a life sentence to time served—26 years—in light of the defendant's remorse for his crimes, lack of disciplinary infractions since 2013, support and mentorship of other prisoners, and ties with his family); *Ramsay*, 2021 WL

1877963, at *3, *15 (reducing life sentence, imposed for firing into a crowded party and killing two innocent bystanders, to 30 years based on circumstances at time of offense and rehabilitation since); *Cruz*, 2021 WL 1326851, at *9 ("[T]he court concludes that his rehabilitation is truly exceptional and, in combination with the other reasons discussed in this section, supports a finding of extraordinary and compelling circumstances warranting a reduction in his sentence."); *United States v. Rodriguez*, 492 F. Supp. 3d 306, 317 (S.D.N.Y. 2020) (reducing life sentence to 30 years, despite "the horrific nature" of the murder, based on rehabilitation and the risks and hardship imposed by the COVID-19 pandemic); *Lopez*, 2020 WL 6298061, at *4-6, *8 (reducing life sentence for murder to time served—23 years—based on extraordinary rehabilitation, youth at the time of offense, and numerous good deeds); *Perez*, 2021 WL 837425, at *5-6 (reducing life sentence, for procuring murder, to time served—23 years—based on health conditions and rehabilitation).

## III. THE SENTENCING FACTORS SUPPORT REDUCING MR. HILL'S SENTENCE TO TIME SERVED.

The Court must determine the sentence that is "sufficient, but not greater than necessary." 18 U.S.C. § 3553(a). The factors that a court must consider in imposing a sentence are set forth in 18 U.S.C. § 3553. The first factor is "the nature and seriousness of the offense." 18 U.S.C. § 3553(a)(1). The sentence must reflect the seriousness of the offense and provide just punishment for that offense. *Id* § 3553(a)(2)(A). It is difficult to think of an offense as serious as murder. Even so, the length of the term Mr. Hill has served so far is a profoundly serious punishment. *See Gray*, 2021 WL 1856649, at *6 ("Though Gray's crime was serious, the twenty-

seven years he has served is a very long period of incarceration that represents a substantial punishment.") Moreover, the remaining factors counsel a reduction of his sentence.

**A. Mr. Hill's History and Characteristics Justify a Sentence Shorter than Life Imprisonment.**

The Court must consider "the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). Mr. Hill's most recent conduct "provides the most up-to-date picture of [these] 'history and characteristics.'" *Pepper*, 562 U.S. at 492. Therefore, the Court must consider Mr. Hill's post-sentencing rehabilitation. *See United States v. McDonald*, 986 F.3d 402, 412 (4th Cir. 2021) ("While the district court is still empowered in its discretion to consider the facts of Appellants' original transgressions, the district court must also at least weigh Appellants' conduct in the years since their initial sentencings."). As described above, this recent conduct—Mr. Hill's clean disciplinary record, his remorse for his crimes, and his support of his family—all show that Mr. Hill is a different person from the young man that the Court sentenced in 1998.

Additionally, while Mr. Hill readily acknowledges that there is no justification for his crime, the Court should consider the circumstances of Mr. Hill's life when he committed his offense. Mr. Hill grew up in a chaotic neighborhood. As a childhood friend of Mr. Hill's describes the experience: "When you walk out of your door to school to have to walk past drug selling, drug users and abusers, dope needles, constantly being asked to sell drugs for a guy a little older than you, and adults from age ten it wears on you. Not to mention the killings, robberies, and any other negative

thoughts that comes to mind." Ex. 11 at 1. Mr. Hill's mother describes how, when Mr. Hill was arrested, she felt relief because at least she knew her son was safe. Ex. 7 ("I want to thank you for taking my son. I don't know what might have happen back then. I just kept praying and asking GOD to look after my boy and keep him safe. I'm a firm believer that everything happen for a reason. The day he was apprehended I was at peace. I knew where my child was and I could now rest.").

In this environment, Mr. Hill lacked male support and guidance, because he never knew his father. Addiction was prevalent in his household, with his two uncles being particularly afflicted. Courts have recognized that instability, violence, and a lack of guidance during childhood are relevant to culpability and should be considered in determining the appropriate sentence. *See, e.g.*, *Santosky v. Kramer*, 455 U.S. 745, 789 (1982) (Rehnquist, J., dissenting) ("It requires no citation of authority to assert that children who are abused in their youth generally face extraordinary problems developing into responsible, productive citizens."); *Landrigan v. Schriro,* 441 F.3d 638, 648 (9th Cir. 2006) (en banc) ("Where a defendant's crime is attributable to a disadvantaged background or emotional or mental problems the defendant is less culpable than one without the excuse."), *vacated*, 501 F.3d 1147 (9th Cir. 2007); *United States v. Floyd*, 945 F.2d 1096 (9th Cir. 1991) (affirming departure to 17 years from guideline range of at least 30 years, because defendant's abandonment by his parents and lack of guidance as a youth rendered defendant less culpable); *Ramsay*, 2021 WL 1877963, at *14 ("Ramsay's upbringing, like his youth more generally, calls into grave doubt a life sentence.").

Additionally, Mr. Hill became a father very young and felt great pressure to provide for his son. As many of Mr. Hill's friends describe, if he had been able to obtain lawful employment, he could have become a law-abiding citizen—and, if those friends had not, the Court might now be ruling on their motion for compassionate release. *See* Ex. 14 ("Even though our neighborhood was filled with negative mentality and not so good role models to follow, we all as young kids tried our best to do the right thing. . . . I bring up my history because that could have also been Warren's story."); Ex. 11 at 1 ("I only can thank God everyday because our roles could have truly been reversed or I could be in the same position is growing up in a city full of negativity to survive."). After Mr. Hill's first conviction, which was for low-level drug distribution, finding a job became all but impossible. Ex. 14 ("I remember talking to Warren many days about the job I might be getting soon and was so happy when Warren asked me to see if my family member could help get him that same opportunity . . . but the opportunity was cut short because of his arrest. From that point on Warren Hill never had a chance to change his life around and to become a success.").

### B. Under Modern Sentencing Practices, a Shorter Sentence is Sufficient to Afford Deterrence and Promote Respect for the Law. These Sentencing Practices Render a Sentence Reduction Necessary to Avoid an Unwarranted Disparity.

The sentence must "promote respect for the law" and "afford adequate deterrence to criminal conduct." 18 U.S.C. §§ 3553(a)(2)(A), 3553(a)(2)(B). The Court must bear in mind that it is reviewing a sentence that was imposed 24 years ago and is significantly out of line with current sentencing practices. This sentence, then,

will not itself promote respect for the law or deter criminal conduct. Prospective criminals will consider the sentences *they* might face, not the sentence imposed on those convicted decades earlier. Indeed, a sentence reduction might itself deter criminal conduct by prisoners, by encouraging rehabilitation in the hope of eventually receiving freedom. Regardless, a sentence shorter than life would be sufficient to satisfy these purposes, as demonstrated by the far shorter sentences imposed today. *See Benson*, 2020 WL 7239983, at *4 ("[P]ost-sentencing developments that would shorten a defendant's sentence if he were sentenced today are fairly considered."). For Mr. Hill to die in prison is a far greater punishment than necessary to promote respect for the law and deter criminal conduct.

The Court must also avoid "unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). The sentences imposed for murder today are far shorter than that imposed on Mr. Hill. Accordingly, this factor warrants a shorter sentence, to prevent a disparity with defendants who are convicted today and are not sentenced to a lifetime of imprisonment. *United States v. Redd*, 444 F. Supp. 3d 717, 728-29 (E.D. Va. 2020) (holding that the need to avoid sentencing disparities is assessed at time of sentencing, relative to comparable defendants sentenced under the framework that governs at the time); *see Williams*, 2021 WL 1662461, at *4-5 (finding a sentence reduction warranted to avoid a sentencing disparity with defendants given shorter sentences more recently).

### C. Mr. Hill Will Not Commit Further Crimes.

The Court must assure itself that Mr. Hill is not a danger to the public. It must also consider the need "to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(C). The evidence shows that Mr. Hill is not a danger to the public and will not commit further crimes.

Mr. Hill's most recent conduct gives the most up to date impression of his character. Mr. Hill has been designated medium security and has a clean disciplinary record. He discourages younger inmates from criminal conduct, even at risk to himself. Mr. Hill has been sober for over eight years and will continue to take serious measures to avoid relapsing. Moreover, BOP staff have deemed Mr. Hill to be at low risk of recidivism. Ex. 3 at 3. Finally, Mr. Hill is beyond eager to reunite with his family in person. Ex. 9 ("I can see he has truly changed. . . . He now realizes that the most important thing he had all the time, which is his family who will stick by him through thick and thin"); Ex. 8 at 1 ("All his hopes and dreams have to do with reuniting with his family, especially his kids getting an education and using it to help others without one."). Having been given this opportunity, Mr. Hill will not jeopardize it with further crime.

Mr. Hill is now 47 years old (and, by the time the Court issues its opinion, will probably be 48). Former prisoners over the age of 45 are much less likely to recidivate than younger offenders. *United States v. Howard*, 773 F.3d 519, 533 (4th Cir. 2014) (citing "sound empirical evidence"); Sarah Rakes et al., *Recidivism Among Older Adults: Correlates of Prison Re-entry*, 17 Just. Pol'y J. 1, 9 (2018) ("It is important to note that all older adults (45 and older) were less likely to recidivate than their

younger peers . . . . [A]ge accounted for more variation in recidivism than any other demographic or criminogenic variable included in the model."); *see also, e.g.*, *Robinson*, 2020 WL 4041436, at *6 n.8 ("Robinson's age, forty-six, indicates a decreased recidivism risk."). Moreover, Mr. Hill had never before served a prison sentence of a length similar to that he has served so far. *See, e.g.*, *United States v. Hardy*, Crim. No. ELH-11-358, 2020 WL 4436376, at *7 (D. Md. Aug. 3, 2020) (finding it significant that the defendant "has already served a sentence in this case . . . which is far longer than any prior sentence").

The Court must also consider the need "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2)(D). Mr. Hill has already gone to great lengths to take full advantage of education, training, and other corrective treatment. A longer sentence would not serve this purpose.

Furthermore, Mr. Hill has an effective plan for his release. His mother Linda, his aunt Ruby, and his sister Latasha have all offered to let Mr. Hill live with them upon release. Mr. Hill's mother has expressed willingness to seek a larger residence if necessary. *See also* Ex. 6 at 2 ("I can teach him how to build hisself up by getting a income, work on his credit, want better & more out of life and to never put hisself in a situation like this one here."). In addition to his offer of employment with King Renaissance, Mr. Hill has a high likelihood of employment with the City of Baltimore Department of Transportation. Letter from City of Baltimore to Court, Ex. 17. This combination of stable employment and family support provides strong incentives to

prevent Mr. Hill from committing further crimes. *See, e.g.*, *Gray*, 2021 WL 1856649, at *5 ("Gray also has presented a sound release plan . . . . On this record . . . the court cannot conclude that further incarceration is necessary to protect the public or to adequately deter Gray from further crimes."); *Rodriguez*, 492 F. Supp. 3d at 314-15 (finding "an unusually supportive network prepared to help [the defendant] effectively transition back into to society" to support a sentence reduction).

Finally, to the extent that the Court has any lingering worries, supervised release will provide a further layer of protection to the public. *See, e.g.*, *Gray*, 2021 WL 1856649, at *5 (finding that incarceration is not necessary because of a term of supervised release); *Robinson*, 2020 WL 4041436, at *7 (observing that supervised release "will also serve to protect the public and deter [defendant] from further criminal conduct.").

**D. Time Served is an Appropriate Sentence.**

Mr. Hill has served almost 25 years in prison. Considering the good time credit that Mr. Hill would have received if sentenced to a term of years, s*ee Gray*, 2021 WL 1856649, at *6, his sentence served should be considered at least 311 months (just under 26 years). Courts have found sentences of equivalent length to warrant a reduction of life imprisonment for murder to time served. *Lopez*, 2020 WL 6298061 (D. Haw. Oct. 27, 2020) (23 years); *Perez*, 2021 WL 837425 (D. Conn. Mar. 4, 2021) (23 years).

Mr. Hill's sentence exceeds the average sentence length for murder in fiscal year 2020, however measured (by mean or by median, nationally or in the District of Maryland). *See 2020 Sourcebook* at 64; D. Md. Average Sentences. A sentence *below*

average would have been sufficient but no greater than necessary given Mr. Hill's prior circumstances, his rehabilitation, lack of criminal history, and the reduced need for deterrence. *See Redd*, 444 F. Supp. 3d at 728-29 (holding that sentence is to be measured against contemporary offenders, not against others sentenced at time of original conviction). Indeed, judges in this District have imposed similar sentences on defendants who are no less culpable. *See, e.g.*, *United States v. Bazemore*, Crim. No. CCB-16-597 (D. Md. Nov. 15, 2018) (300 months), ECF No. 507.

Moreover, Mr. Hill did not serve his sentence under any circumstances but during a pandemic, the likes of which the world had not seen for a century. Even given his life sentence, this incarceration has "sufficiently increased the severity of the sentence beyond what was originally anticipated such that the purposes of sentencing are fully met even with the proposed reduction." *Babb*, 2021 WL 2315459, at *20 (quoting *United States v. Green*, TDC-10-761, 2020 WL 2992855, at *4 (D. Md. June 4, 2020)); *see also Rodriguez*, 492 F. Supp. 3d at 311 ("[T]he pandemic . . . has made Rodriguez's incarceration harsher and more punitive than would otherwise have been the case.").

Therefore, after considering the 18 U.S.C. § 3553 factors, the Court should find that the sentence Mr. Hill has already served is sufficient and reduce Mr. Hill's sentence to time served.

## CONCLUSION

Mr. Hill has already served a sentence of almost 25 years, for a crime he committed when he was only 22. He has reformed himself thoroughly during that time. He received a far harsher sentence than his codefendants and he would not

have received such a sentence today. These extraordinary and compelling circumstances warrant a reduction of Mr. Hill's sentence.

WHEREFORE, Mr. Hill respectfully requests that the Court reduce his sentence to time served. Alternatively, Mr. Hill respectfully requests a lesser reduction of his sentence, as the Court deems fit.

Respectfully submitted,

By: /s/ Eugene V. Gorokhov

Eugene Gorokhov, Esq.
D. Md. Bar 07233
*Attorney for Defendant*
Jonathan Knowles, Esq.
BURNHAM & GOROKHOV, PLLC
1424 K Street NW, Suite 500
Washington, DC 20005
(202) 386-6920 (phone)
(202) 765-2173 (fax)
eugene@burnhamgorokhov.com
jonathan@burnhamgorokhov.com

**CERTIFICATE OF SERVICE**

I, Eugene Gorokhov, certify that I electronically filed the foregoing Corrected Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(C)(1)(A)(i) and Incorporated Memorandum of Law with the Clerk of Court using the CM/ECF system. The Court's CM/ECF system will provide notice to the AUSA and all counsel of record. I have sent the sealed exhibits by email to Matthew Phelps, counsel of record for the government.

Respectfully submitted,

By: *<u>/s/ Eugene V. Gorokhov</u>*

Eugene Gorokhov, Esq.
D. Md. Bar 07233
*Attorney for Defendant*
BURNHAM & GOROKHOV, PLLC
1424 K Street NW, Suite 500
Washington, DC 20005
(202) 386-6920 (phone)
(202) 765-2173 (fax)
eugene@burnhamgorokhov.com